## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DARRIN PORDASH, | ) | Case No. 1:06CV836 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER |
| | ) | Magistrate Judge George J. Limbert |
| vs. | ) | |
| | ) | |
| STUART HUDSON, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Darrin A. Pordash, (hereinafter "Petitioner"), through counsel, filed his petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 on January 13, 2006. Electronic Case Filing (hereinafter "ECF") Dkt. #1.  On August 6, 2006, Warden Stuart Hudson (hereinafter "Respondent") filed an answer/return of writ. ECF Dkt. #8.  After a thorough review of the record, and as explained in the body of this Report, the undersigned respectfully recommends that this Court DENY Petitioner's application for a writ of federal habeas corpus as to the rape and sexual battery convictions as to victims E.L. and L.R. and GRANT the application for federal habeas corpus as to the rape conviction as to victim J.B., but DENY the application as to the sexual battery conviction as to victim J.B.

**I.**     **FACTUAL BACKGROUND**

The Ninth District Court of Appeals set forth the following facts of this case on direct appeal, which are not in dispute.[1]

---

[1] Petitioner's challenge to those factual findings in his direct appeal in the Ninth District Court of Appeals that are in dispute is discussed in Section III(B), with a thorough review of the circumstances which serve to rebut the presumption of correctness to that court's decision.

Appellant was a chiropractor who operated an office in Sheffield Village. Appellant's convictions each stem from conduct that occurred in his chiropractic office over a three-month span in 2002. Three individuals came forward alleging that Appellant had improperly touched them. The victims, E.L., J.B., and L.R., each came forward with substantially the same factual allegations.

E.L. described her incident as occurring on her third visit to Appellant's office. Appellant manipulated her back and then proceeded to rub her buttocks. According to E.L., Appellant then began to rub her vagina outside her clothing, and then inserted his hand into her underwear and began to rub her vagina. Finally, Appellant penetrated her vagina with his finger. E.L. testified that she did not feel as though she was being held down, but that Appellant's other hand was on her back throughout the encounter. E.L. told co-workers of the event later that day, but she did not report it to the police for more than a month.

J.B. met Appellant at her work place, a strip club, in May 2002. J.B.'s version of events is as follows. While Appellant manipulated her back, he touched her vagina through her clothing. When J.B. pressed her body down on to the table, Appellant removed his hand. Subsequently, Appellant began to massage her back and then inserted his finger into her vagina. J.B. contacted a lawyer regarding the incident and was informed that she should contact the police. She did so, and subsequently agreed to arrange a lunch meeting with Appellant at which she would record their conversation.

Finally, L.R. testified that she sought treatment from Appellant for pain she was experiencing from a ligament on the inside of her right leg. In the course of rubbing her ligament, Appellant moved his hand towards L.R.'s vagina, moved her panties aside, and penetrated her vagina with his finger. L.R. testified that she immediately grabbed his arm, pushed him away and left the office. L.R. then went to the police to report the incident.

At trial, Appellant conceded that each encounter had occurred. However, his testimony alleged that each victim consented to the sexual activity. At the close of the State's case, Appellant made his motion for acquittal claiming that the State had failed to prove the element of force required for his convictions. His motion was denied, and he subsequently renewed the motion at the close of his defense. Once again, the trial court found that sufficient evidence of force had been presented and sent the case to the jury. The jury returned guilty verdicts on the six counts in the indictment, and Appellant was sentenced to nine years incarceration on each rape charge, the sentences to be served concurrently. The trial court found the sexual battery convictions to be allied offenses and accordingly imposed no sentence for

-2-

them. In addition, Appellant was adjudicated a sexual predator.

ECF Dkt. #8, Attachment #1, Exhibit G at 1-3.

## II. PROCEDURAL HISTORY

### A. STATE TRIAL COURT

The Lorain County Grand Jury indicted Petitioner on three counts of rape in violation of Ohio Revised Code §2907.02(A)(2) and three counts of sexual battery in violation of Ohio Revised Code §2907.03(A)(1). ECF Dkt. #9, Exhibit A. On February 23, 2004, a jury found Petitioner guilty on all counts, and on March 24, 2004, the Lorain County Court of Common Pleas sentenced him to nine years of imprisonment on each rape count, with each sentence to run concurrently. *Id.* at Exhibits B and DD. The court also designated Petitioner a sexual predator. *Id*. Petitioner filed a post-verdict motion for acquittal, but the trial court denied the motion on March 24, 2004. *Id.* at Exhibits C and D.

### B. DIRECT APPEAL

On April 16, 2004, Petitioner appealed his conviction to the Ninth District Court of Appeals and presented the following five assignments of error:

ASSIGNMENT OF ERROR I:
Appellant Was Denied Due Process and the Liberties Secured by Ohio Const. art. I, §§ 1, 2, 10, and 16 When He Was Convicted of the Offenses of Rape and Sexual Battery upon Insufficient Evidence.

ASSIGNMENT OF ERROR II:
Appellant was denied Due Process and the Liberties Secured by the Ohio Const. art. I, §§ 1, 2, 10, and 16 Because his Convictions for Rape and Sexual Battery Are Against the Manifest Weight of the Evidence.

ASSIGNMENT OF ERROR III:
Appellant was Denied the Effective Assistance of Counsel. U.S. Const. amend. VI, XIV, and Ohio Const., art. I, §§ 1, 2, 10, and 16.

ASSIGNMENT OF ERROR IV:
The Trial Court Erred When It Permitted Improper and Extraneous Bolstering
by the State.

ASSIGNMENT OF ERROR V:
The Trial Court Erred in Classifying Appellant as a Sexual Predator.

ECF *Dkt. #9*, Exhibit E.

On November 17, 2004, the Ninth District Court of Appeals affirmed Petitioner's

convictions and sentences. ECF Dkt. #9, Exhibit G.

**C**.     **SUPREME COURT OF OHIO**

On December 29, 2004, Petitioner, through counsel, filed an appeal with the

Supreme Court of Ohio setting forth the following Proposition of Law:

> The physician-patient relationship does not supplant and cannot be a
> substitute for the requirement of the State to prove in every rape case that the
> victim was purposely compelled to submit by force or threat of force.

ECF Dkt. #9, Exhibit H.  On March 23, 2005, the Supreme Court of Ohio dismissed the appeal

as not involving any substantial constitutional question. *Id.* at Exhibit J.

**D.**     **POST-CONVICTION PETITION**

On November 24, 2004, while his appeal to the Ohio Supreme Court was pending,

Petitioner, through counsel, filed a post-conviction petition to set aside his conviction and

sentence in the Lorain County Court of Common Pleas. ECF Dkt. #9, Exhibit K.  Petitioner

alleged that trial counsel was ineffective and he was denied a fair trial resulting therefrom when

counsel conducted a deficient voir dire of the jury pool by not fully inquiring into possible juror

biases and exposure to pretrial publicity about Petitioner's case. *Id.*  Petitioner also asserted the

ineffectiveness of counsel in reference to counsel's failure to utilize impeaching evidence, such

as a report from a private investigator detailing victim L.R.'s denials of rape and digital

-4-

penetration by Petitioner and transcripts of an interview with an individual who was allegedly previously falsely accused of sexual assault by victim L.R. *Id.*  Petitioner further complained that counsel's ineffectiveness opened the door for misconduct by the prosecutor, such as when his counsel stated at closing that a number of other female patients in Petitioner's chiropractic practice were not sexually abused. *Id.* at 16.  Petitioner contended that these statements invited the prosecutor to engage in personal attacks on Petitioner as the prosecutor remarked that just because other patients failed to come forward did not mean that abuse did not occur.  *Id.*

On February 9, 2005, the trial court dismissed Petitioner's motion for post-conviction relief, finding that *res judicata* barred the claims as they were addressed on direct appeal or could have been addressed on appeal and Petitioner otherwise failed to support his motion with competent evidence sufficient to demonstrate the ineffective assistance of counsel.  ECF Dkt. #9, Exhibit N.

Petitioner, through counsel, appealed to the Ninth District Court of Appeals and on May 31, 2005, argued the following assignments of error:

> Assignment of Error No. 1
> The trial court erred in failing to set forth detailed and specific findings of fact and conclusion of law.
>
> Assignment of Error No. 2
> The trial court erred in denying the Petition for Postconviction relief (T.r. 70) without a hearing (Tr., unnumbered), thus depriving Appellant of liberties secured by U.S. Const., amend. XIV and Ohio Const., art. I, §§ 1, 2, 10, and 16, including due process of law and meaningful access to the courts of this state.

ECF Dkt. #9, Exhibit O.  On August 18, 2005, the Ninth District Court of Appeals affirmed the decision of the trial court. *Id.* at Exhibit Q.

Petitioner thereafter appealed to the Supreme Court of Ohio, and through counsel,

asserted the following sole Proposition of Law:

> When a post-conviction petition states operative facts alleging one or more
> constitutional violations and presenting evidentiary materials corroborative
> of the allegations, failure to grant an evidentiary hearing is a denial of
> liberties secured by U.S. Constitution Amendment 14 and Ohio Constitution
> Article I, §§ 1, 2, 10, and 16.

ECF Dkt. #9, Exhibit R.  On December 28, 2005, the Supreme Court of Ohio considered the

jurisdictional memoranda and denied Petitioner leave to appeal.  *Id.* at Exhibit T.

### E.        APPLICATION TO REOPEN DIRECT APPEAL

On December 30, 2005, Petitioner, through counsel, moved to reopen his direct appeal

with the Ninth District Court of Appeals pursuant to Rule 26(B) of the Ohio Rules of Appellate

Procedure.  ECF Dkt. #9, Exhibit DD.  The appellate court dismissed Petitioner's motion as

untimely and found that Petitioner had not demonstrated good cause in order to justify his

delayed motion to reopen. ECF Dkt. #9, Exhibit U.

Through new counsel, Petitioner appealed to the Supreme Court of Ohio, and on

February 28, 2006, he filed a memorandum in support of jurisdiction asserting the following

Propositions of Law:

> FIRST PROPOSITION OF LAW
> A prosecutor's closing argument commenting on the veracity of Defendant's
> testimony is improper and prejudicial and deprive [sic] the defendant of a fair
> trial in violation of the Fifth and Fourteenth Amendments, United States
> Constitution; Sections 10 and 16, Article I, Ohio Constitution.
>
> SECOND PROPOSITION OF LAW
> Trial counsel renders constitutionally deficient and prejudicial performance, in
> contravention of the state and federal constitutions, when counsel fails to object
> to improper comments by the prosecutor during closing argument.  Sixth and
> Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio
> Constitution.

THIRD PROPOSITION OF LAW
Consistent withe [sic] the Sixth Amendment to the United States Constitution, a
trial court may not impose a term of incarceration which exceeds the statutory
minimum term of imprisonment upon an offender who has never before served a
prison term, unless the criteria specified in R.C. §2929.14(C), are admitted by
the offender or provento [sic] a jury beyond a reasonable doubt.  Blakey v.
Washington, (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403; United
States v. Booker, (2005), 542 U.S. __ , 125 S.Ct. 838, 160 L.Ed.2d 621.

FOURTH PROPOSITION OF LAW
When appellate counsel fails to raise a meritorious sentencing issue during the
course of the criminal defendant's one and only direct appeal of his conviction
and sentence, appellate counsel provides constitutionally ineffective assistance of
counsel, and the defendant is entitled to a new direct appeal, with effective
representation.  Fourteenth Amendment, United States Constitution; Sections 10
and 16, Article I, Ohio Constitution.

ECF Dkt. #9, Exhibit V.  On May 10, 2006, the Supreme Court of Ohio dismissed Petitioner's

appeal as involving no substantial constitutional questions. ECF Dkt. #9, Exhibit X.

## F.    SECOND POST-CONVICTION PETITION

On January 23, 2006, Petitioner, through counsel, filed a successive petition to vacate

conviction and set aside his sentence in the Lorain County Court of Common Pleas. ECF Dkt.

#9, Exhibit Y.  On February 16, 2006, the trial court dismissed the petition as untimely. ECF

Dkt. #9, Exhibit AA.

Petitioner appealed this dismissal to the Ninth District Court of Appeals on March 17,

2006.  ECF Dkt. #9, Exhibit BB.  However, on May 30, 2006, the appellate court dismissed

Petitioner's appeal due to his failure to file an appellant brief by the briefing deadline. ECF Dkt.

#9, Exhibit CC.

## III.    FEDERAL HABEAS CORPUS PETITION

On April 7, 2006, Petitioner, through his original appellate counsel, filed the instant

petition seeking a writ of federal habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.

Petitioner raises the following grounds for relief:

>**Ground and Claim One**:  The state court judgments and convictions against Petitioner are void because his convictions and sentences were secured in violation of liberties guaranteed by U.S. Const., amend. VI and XIV when petitioner was denied the effective assistance of trial counsel.

>**Ground and Claim Two**:  Petitioner was Denied the Effective Assistance of Trial Counsel When His Counsel Committed a Series of Unprofessional Errors that Undermined the Reliability of the Jury Verdicts.

>**Ground and Claim Three**: Petitioner Was Denied the Effective Assistance of Counsel When Counsel Failed to Use Impeachment Evidence Which Was Available to Counsel and Which Was Admissible.

>**Ground and Claim Four**:  Petitioner was denied the effective assistance of trial counsel when trial counsel opened the door to prosecutorial misconduct in the trial.

>**Ground and Claim Five**:  Petitioner Was Denied Due Process of Law in Violation of U.S. Const. amend. XIV When He Was Convicted of the Offenses of Rape and Sexual Battery upon Insufficient Evidence.

ECF Dkt. #1.

## IV.   STANDARDS OF REVIEW

### A.   PROCEDURAL BARRIERS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 governs the review the instant petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under 28 U.S.C. § 2254(d), a state prisoner is entitled to relief if he is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).  However, "procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional

claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).

Before seeking federal habeas relief, a state prisoner must exhaust available state remedies thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* When a state court does not address a prisoner's claims because the prisoner did not meet the state's procedural requirements in seeking review of his claimed errors, and the state court rejects the claim on an adequate and independent state ground, the petitioner has procedurally defaulted his claims. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). The procedural default doctrine applies whether the default in question occurred at trial, on appeal, or on state collateral attack. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Simply stated, a federal court may review federal claims

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).

## B.    MERITS REVIEW

If a federal habeas petitioner overcomes the procedural obstacles, the AEDPA sets forth the standard of review for the merits of a federal habeas corpus petition. 28 U.S.C. § 2254. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the United States Supreme Court held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* In contrast, the Supreme Court held that a state court adjudication involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "The proper inquiry for the 'unreasonable application' analysis is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect." *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).

## V.  LAW AND ANALYSIS

### A.  GROUNDS FOR RELIEF NUMBERS ONE, TWO AND FOUR

In his first ground for relief, Petitioner contends that he was denied the effective assistance of counsel when trial counsel failed to conduct a proper voir dire examination of the prospective jury panel in order to establish a fair and impartial jury.  ECF Dkt. #1 at 8.

-10-

Petitioner complains of numerous alleged omissions by counsel, including counsel's failure to inquire into prospective jurors as to prior experiences and/or relationships with law enforcement personnel, exposure to the publicity surrounding the instant case, and other potential biases of the jurors, including a prospective juror who had indicated knowing a person with the same name as one of the victims, another juror who indicated that he was a rape counselor, a juror who indicated that he was retired from law enforcement and had investigated sex crimes, another who had a family member or friend who was the victim of a sexual assault, and a juror who informed his counsel that he would not resolve doubt in Petitioner's favor.  *Id.*

In his second ground for relief, Petitioner contends that his counsel was ineffective because he "committed a series of unprofessional errors that undermine the reliability of the jury verdicts."  ECF Dkt. #1 at 14.  Petitioner asserts that his counsel first stipulated to the accuracy of a transcript of a tape-recorded conversation of a lunch between Petitioner and one of the victims and then counsel sought to offer a second transcript to impeach the transcript to which he had already stipulated the accuracy.  *Id.* at 15.  Petitioner further contends that his counsel was also unprepared to cross-examine a witness about the transcript as he could not find the desired information on the tape recording to play for cross-examination.  *Id*.  Petitioner also complains that his counsel failed to request an instruction to the jury on compulsion by force or threat of force when the cornerstone of his defense was the lack of this essential element.  *Id*. at 16.  Moreover, Petitioner asserts that his counsel failed to object to and request a response relating to the proper standard for compulsion under caselaw after the jurors requested the legal definition of compulsion and the court informed them that they were to use the common usage of the definition of compulsion.  *Id.*

-11-

In his fourth ground for relief, Petitioner asserts the ineffectiveness of counsel in opening the door to prosecutorial misconduct at trial when his counsel argued that a number of Petitioner's patients were not sexually abused and the prosecutor responded that defense counsel was trying to mislead jurors as to the issues in this case as three women had come forward saying that they were sexually abused by Petitioner.  ECF Dkt. #1 at 19.  Petitioner states that no objective reasonable basis existed for his counsel to argue that no abuse occurred in this case because 397 of his other female patients were treated and not abused and he asserts that this  impacted reasonable doubt in his case.  *Id.*

Petitioner raised these same ineffective assistance of counsel issues in his direct appeal to the Ninth District Court of Appeals.  ECF Dkt. #9, Exhibit E at 19-25.  However, in his memorandum in support of jurisdiction to the Supreme Court of Ohio, Petitioner failed to raise any ineffective assistance of counsel issues.  In fact, Petitioner's sole proposition of law before the Ohio Supreme Court concerned the element of force in order to prove the offense of rape. ECF Dkt. #9, Exhibit H.

In Ohio, the failure to present a claim to either an appellate court or to the Ohio Supreme Court constitutes a waiver of the claim. *State v. Broom*, 40 Ohio St. 3d 277, 288-289 (1988); *see also State v. Moreland*, 50 Ohio St. 3d 58, 62 (1990).  This Sixth Circuit also recognizes that the failure to include a claim as a Proposition of Law for review in the Supreme Court of Ohio results in waiver of that claim in federal habeas corpus review and constitutes a procedural default. *See Leroy v. Marshall*, 757 F.2d 94, 97, 100 (6th Cir. 1985).

Since Petitioner failed to raise any ineffectiveness of counsel issues before the Ohio Supreme Court, he has procedurally defaulted all of his claims relating to the ineffectiveness of

-12-

his trial counsel.  "[S]tate prisoners must give the state courts one full opportunity to resolve

any constitutional issues by invoking one complete round of the state's established appellate

review process."  *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004), citing *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999).  Failure to present grounds for relief at every level of state

court review constitutes a procedural default.  *Marshall*, 757 F.2d at 100.

      Petitioner argues that he has not procedurally defaulted these grounds for relief because

he gave the Ohio Supreme Court adequate notice of these issues when he followed the

applicable Ohio Supreme Court Rule of Practice by submitting his memorandum in support of

jurisdiction and attaching the opinion of the Ninth District Court of Appeals which contained

these issues as assignments of error.  ECF Dkt. #12 at 1-10.  Petitioner also contends that

because review by the Ohio Supreme Court is discretionary, he was not required to raise claims

before that court.  ECF Dkt. #12 at 12.

      The undersigned recommends that the Court find that this argument is without merit.

The law is clear that review by a state supreme court, including the Ohio Supreme Court, is "an

available state remedy" that a federal habeas corpus petitioner must exhaust before he can file a

federal habeas corpus petition, even if the state supreme court has discretionary review.

*O'Sullivan v. Boerckel,* 526 U.S. 838, 847-848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Williams*

*v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006)("Although Petitioner raised the issue in his

appeal to the Eighth District Court of Appeals, he failed to raise the issue to the Ohio Supreme

Court in pursuing direct review.")(citing and quoting *O'Sullivan,* 526 U.S. at 847-48, 119 S.Ct.

1728.

-13-

As support for the proposition that attaching a copy of the intermediate appellate court opinion is sufficient notice to the Ohio Supreme Court of his desire to raise the same issues before that court, Petitioner relies on the fact that the purpose of the Ohio Supreme Court's requirement of the memorandum in support of jurisdiction is to persuade the court why the case is one of substantial constitutional question or great general or public interest.  ECF Dkt. #12 at 13.  Section 1(B)(4) of Ohio Supreme Court Rules of Practice, which contains the items to include in the memorandum in support of jurisdiction, does require an appellant to include a thorough explanation of why a substantial constitutional question or great general or public interest is involved.  Ohio Sup.Ct.R. III, section 1(B)(4).  However, that same section of the Ohio Supreme Court Rule of Practice III also equally requires that the appellant include "[e]ach proposition of law supported by a brief and concise argument."  Ohio Supreme Court Rule of Practice III, s. 1(B)(4).  Petitioner failed to follow this Rule as he did not include grounds for relief one, three and four as propositions of law in his memorandum in support of jurisdiction.

Petitioner did raise the instant ineffectiveness of counsel issues in his petition for post-conviction relief before the trial court.  ECF Dkt. #9, Exhibit K.  However, the trial court dismissed Petitioner's post-conviction relief petition primarily on the basis of *res judicata*, finding that the issues had already been addressed on direct appeal or should have and could have been presented and addressed on direct appeal but were not.  ECF Dkt. #9, Exhibit N.

Under Ohio's doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant from raising in any proceeding, except an appeal from that judgment, any issue that was raised or could have been raised at trial or on appeal from that judgment. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). Ohio law requires that a defendant raise claims that

-14-

appear on the face of the record on direct appeal or face waiver of the claims by *res judicata*.

*State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967).  This includes ineffective assistance

of counsel claims, which a defendant must bring on direct appeal if he had new counsel on

appeal and the trial court record contains sufficient evidence to support the claim.  *Williams*,

380 F.3d at 967, citing *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982).  If the trial

court record lacks sufficient evidence to support the claim, the defendant must raise the claim in

post-conviction proceedings. *Id, citing State v. Cooperrider,* 4 Ohio St.3d 226, 448 N.E.2d 452,

454 (1983). In post-conviction proceedings, a petitioner can introduce evidence outside the trial

court record to support the claim. *Id.*  If a defendant brings an ineffective assistance of counsel

claim in direct review, Ohio's *res judicata* rule bars him from raising the claim again in post-

conviction proceedings. *Id.*  Ohio's doctrine of *res judicata* has long been held an "adequate and

independent" basis for the state court decisions and is an effective bar to this Court's review of

alleged errors. *Williams v. Bagley*, 380 F.3d at 966.

Here, Petitioner, through counsel different from trial counsel, raised the issues in

grounds for relief one, two and four on direct appeal.  ECF Dkt. #9, Exhibit E at 18-25.  The

appellate court addressed and discussed these claims in its opinion.  ECF Dkt. #9, Exhibit G at

7-9.  Accordingly, Ohio's doctrine of *res judicata* barred him from raising these issues again in

post-conviction relief and the trial court correctly applied *res judicata* to these claims.  *Res*

*judicata* therefore forecloses this Court from reconsidering these issues and the undersigned

recommends that the Court dismiss these issues as procedurally defaulted.  Thus, Petitioner has

procedurally defaulted review of grounds for relief one, two and four because he failed to raise

those issues before the Ohio Supreme Court and because he could not raise them a second time

on post-conviction review.

Petitioner can avoid the imposition of the doctrine of procedural default on these grounds for relief if he can show cause to excuse the procedural defaults and prejudice resulting therefrom or if he can show that a fundamental miscarriage of justice would result if review did not occur.  Petitioner has failed to present any cause for his procedural default or a fundamental miscarriage of justice.  Consequently, the undersigned recommends that the Court dismiss Petitioner's grounds for relief numbers one, two and four as procedurally defaulted.

### B.      GROUND FOR RELIEF NUMBER THREE

In his third ground for relief, Petitioner asserts that his counsel was ineffective when he failed to use present evidence of a tape-recorded statement or call a witnesses who could testify as to statements made by victim L.R.'s cousin to a private investigator where the cousin stated that L.R. accuses everyone of touching her or raping her and she had falsely accused two others of rape and another man of sexual harassment.  ECF Dkt. #1 at 17.  Respondent contends that *res judicata* also bars consideration of this ground for relief because while Petitioner raised it for the first time in post-conviction review, he could have and should have raised it on direct appeal.  ECF Dkt. #8 at 9.

Petitioner did not raise this issue as an assignment of error before the intermediate appellate court.  Rather, he raised it for the first time in post-conviction proceedings.  ECF Dkt. #9, Exhibit K.  Upon post-conviction review, the trial court applied *res judicata* to bar all of Petitioner's claims and held that he had otherwise failed to support his ineffectiveness claims or show resulting prejudice.  ECF Dkt. #9, Exhibit N.  The trial court further found that trial counsel's failure to present alleged evidence challenging the credibility of L.R. fell within

-16-

sound trial tactics and Petitioner had failed to show that the results of the proceedings would have been different with this evidence or he was otherwise prejudiced. *Id.*

The intermediate appellate court did not apply *res judicata* to this particular ineffectiveness of counsel claim. ECF Dkt. #9, Exhibit Q at 6-9. Rather, the court addressed it on the merits. *Id.* Since that court addressed the merits of this claim, the undersigned recommends that the Court consider the issue as well and not bar consideration due to procedural default. In anticipation, Respondent alternatively argues that the appellate court applied the proper standard of review and reasonably applied that standard to the facts. ECF Dkt. #8 at 13-15.

Upon reviewing Petitioner's claim for the ineffective assistance of his counsel in failing to use available impeaching evidence against victim L.R., the Ninth District Court of Appeals found that Petitioner failed to overcome the presumption that his counsel's tactics were a part of sound trial strategy and he had failed to demonstrate that he was actually prejudiced by his counsel's actions. ECF Dkt. #9, Exhibit Q at 7-9. The court held that Petitioner was unable to show that the challenge to the credibility of one victim would have changed the outcome of a trial where three victims were involved and ample evidence and testimony established his guilt. Petitioner appealed to the Supreme Court of Ohio and that court declined review. ECF Dkt. #9, Exhibits R and T.

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant reversal of a

conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *See Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *See Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified to are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  In order to present an ineffective assistance of counsel claim based upon a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result. *Malcum v. Burt,*  276 F.Supp.2d 664, 679

-18-

(E.D.Mich.2003) citing *United States ex. rel. Jones v. Chrans,* 187 F.Supp.2d 993, 1009

(N.D.Ill.2002).

Under Ohio's Rape Shield Law, a rape victim's prior allegations of rape may be

admitted at trial only if those allegations are unfounded and did not involve sexual activity.

*Boggs v. Collins*, 226 F.3d 728, 734 (6th Cir. 2000) (citing *State v. Boggs*, 63 Ohio St.3d 418,

588 N.E.2d 813, 816-17 (Ohio 1992)); Ohio Rev. Code § 2907.02(D). Also, when faced with

alleged prior false accusations or rape, federal courts find that cross-examination is

constitutionally compelled when it reveals witness bias or prejudice, but not when it is aimed

solely to diminish a witness' general credibility. *Boggs*, 226 F.3d at 737 (citing *Olden v.

Kentucky*, 488 U.S. 227, 232 (1988), *U.S. v. Abel*, 469 U.S. 45, 56 (1984)). "[T]he Constitution

does not require that a defendant be given the opportunity to wage a general attack on

credibility by pointing to individual instances of past conduct." *Id.* at 740. "[T]he Sixth

Amendment only compels cross-examination if that examination aims to reveal the motive,

bias, or prejudice of a witness/accuser." *Id.*

In the instant case, Petitioner fails to establish sufficient information relating to the

allegedly false accusations of rape that victim-L.R. made. While he discussed a tape-recorded

statement made by L.R.'s cousin in his November 22, 2004 petition to vacate his conviction,

Petitioner does not produce the statement or a transcript thereof and does not appear to have

produced this transcript to any of the state courts. In the petition to vacate, Petitioner mentions

that the investigator delivered the tape-recorded statement and a written transcript thereof to

Petitioner's counsel on November 19, 2002 and he would seek leave to file the transcript under

seal due to its potentially embarrassing nature to L.R. ECF Dkt. #9, Exhibit K at 13. However,

a review of the file fails to show the filing of this transcript and Petitioner does not otherwise describe its contents, establish the statements made by victim-L.R. or their falsity, or show the impact that admitting this evidence would have made in his trial.

Petitioner did attach a transcript of what appears to be a tape-recorded conversation between the investigator and a man against whom victim-L.R. had allegedly claimed sexual harassment. ECF Dkt. #9, Exhibit K (Direct Examination of Rick Carter).  However, again, Petitioner fails to show the impact that an allegedly false sexual harassment claim made by victim-L.R. would have had on the outcome of his case.

Petitioner also attached to his petition to vacate what appears to be some interview notes of the investigator's November 2002 conversation with Patricia Rose, victim-L.R.'s ex-stepmother.  ECF Dkt. #9, Exhibit K (Interview Notes with Patricia Rose).  Again, however, Petitioner fails to establish that victim-L.R. made said false accusations of molestation when she was a child and how these statements made by Patricia Rose relating to her ex-stepdaughter would have impacted the current case.

Moreover, even if counsel had acted deficiently in failing to submit this information to the court for an *in camera* review to determine whether the prior allegations were actually false and whether the allegations involved sexual activity, Petitioner fails to overcome the fact that it may have been counsel's sound trial strategy not to present these witnesses or information as Patricia Rose was a biased witness and Mr. Carter had prior felonies on his record.  Further, Petitioner fails to show that this evidence was more than just a general attack on victim-L.R.'s credibility as opposed to showing that it would be used to show her motive, bias or prejudice toward Petitioner.  Petitioner further fails to show that the use of this testimony would have

produced a different outcome at trial.

Accordingly, upon review of the *Strickland* standard and the Ohio appellate court's decision, Petitioner has failed to show, and the undersigned has failed to find, that the state court's decision was contrary to law, involved an unreasonable application of *Strickland*, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2); *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).

### C.        GROUND FOR RELIEF NUMBER FIVE

In this ground for relief, Petitioner contends that he was denied the due process of law when the jury convicted him of rape and sexual battery based upon insufficient evidence presented by the prosecution.  ECF Dkt. #1 at 20-29.  For the following reasons, the undersigned recommends that the Court find that the Ohio appellate court employed the wrong standard of review under state law in determining sufficiency of the force element of rape.  The undersigned further recommends that the Court review the instant case under the correct Ohio standard and find that sufficient evidence was presented in order to establish that Petitioner raped victims E.L. and L.R., but insufficient evidence was presented in order to prove that Petitioner raped victim J.B.  The undersigned further recommends that the Court find that sufficient evidence was presented with which to prove that Petitioner committed sexual battery against victims E.L. and L.R., but insufficient evidence was presented in order to prove sexual battery against victim J.B.

When reviewing the merits of a federal habeas corpus petition, the Court must keep in mind that a state court decision is considered contrary to federal law "if the state court arrives at

-21-

a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413.  A court's application of federal law is unreasonable where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  Moreover, a federal habeas court cannot issue a writ "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  And a state court's factual findings are presumed correct in the absence of clear and convincing evidence to the contrary. *Brown v. Palmer,* 441 F.3d 347, 350 (6th Cir. 2006), citing 28 U.S.C. § 2254(e)(1).

A conviction without proof beyond a reasonable doubt of all elements of the offense, that is, every fact necessary to constitute the crime, violates Due Process. *Jackson v. Virginia*, 443 U.S. 307, 315-319 (1979); *In re Winship*, 397 U.S. 358 (1970).  In determining whether the State has presented sufficient evidence of the facts necessary to constitute the crime,  "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  "The *Jackson* standard must be applied with 'explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Palmer*, 441 F.3d at 351, quoting *Jackson*, 443 U.S. at 324, n.16.

On habeas review, the District Court cannot weigh the credibility of the witnesses, nor may the Court overturn a conviction merely because it would have acquitted had it acted as the

finder of fact. *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985); *Walker v. Engle,* 703 F.2d

959, 969 (6th Cir. 1983).  In sum, the inquiry is not whether the jury made the *correct*

determination of guilt or innocence, but whether it made a *rational* decision to acquit or

convict. *Herrera v. Collins,* 506 U.S. 390, 402 (1993).

## 1.    RAPE CONVICTIONS

Ohio Revised Code §2907.02(A)(2) prohibits a person from engaging in sexual conduct

when that person *purposely compels another to submit by force or threat of force*. Ohio Rev.

Code § 2907.02(A)(2).  Sexual conduct includes the insertion of any part of the body... into the

vaginal or anal cavity of another."  Ohio Rev. Code § 2907.01(A)(1). "Force" is defined as "any

violence, compulsion, or constraint physically exerted by any means upon or against a person."

Ohio Rev. Code § 2901.01.

In the instant case, the Ninth District Court of Appeals dealt with the sufficiency of the

evidence challenge in conjunction with a separate manifest weight of the evidence challenge

made by Petitioner, finding that it could dispose of the sufficiency of the evidence argument in a

similar manner to that addressed and discussed in the context of manifest weight.  ECF Dkt. #9,

Exhibit G at 7.  Accordingly, in holding that sufficient evidence of the force element of rape

existed against each of the three victims, the Ninth District Court of Appeals found that:

> "As long as it can be said that the rape victim's will was overcome by fear or
> duress, the forcible element of rape can be established." *Eskridge* (1988), 38
> Ohio St.3d 56, 59 (citing *State v. Martin* (1946), 77 Ohio App. 553).  In the
> instant case, each victim described in detail the intense fear they experienced
> during their encounters with Appellant at his office.  While Appellant is correct
> that the doctor-patient relationship does not create an inference of force, that is
> not to say it is entirely irrelevant.  The relationship of the parties is a relevant
> fact when examining whether the element of force has been proven. *Eskridge*, 38
> Ohio St.3d at 58.  Appellant was a chiropractor, specializing in treatment of the
> spine.  At the time of each rape, he was, just prior to committing the sexual act,

> acting in his capacity as each victim's treating physician.  Further, each victim knew of Appellant's extensive background in martial arts.  As such each victim testified that they feared that any resistance would lead to serious bodily harm.  Accordingly, we cannot say that the jury lost its way in finding the victims' wills had been overcome by fear, establishing the element of force."

ECF Dkt. #9, Exhibit G at 6.

Upon review of the Ohio appellate court's opinion, the undersigned recommends that the Court find that the court applied the wrong standard of review under Ohio law when it determined the sufficiency of the evidence as to the offense of rape.  The Ohio appellate court cited and quoted *State v. Eskridge***,** 38 Ohio St.3d 56, 59, 526 N.E. 2d 304 (1988) as the Ohio standard in reviewing whether the prosecution proved the force element of rape by Petitioner of each of the three victims by showing that each victim's will was overborne by fear or duress.  ECF Dkt. #9, Exhibit G at 5-7; ECF Dkt. #8 at 16.  However, that case is based upon the coercive control that a parent has over a minor child and the Ohio Supreme Court recognized this control in finding that only minimal force need be shown in a case where a parent sexually abuses a minor child. *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661, 665 (1992).

In *Schaim*, the Ohio Supreme Court held:

> The same rationale does not apply to an adult. No matter how reprehensible the defendant's alleged conduct, a woman over the age of majority is not compelled to submit to her father in the same manner as is a four-year-old girl. She is no longer completely dependent on her parents, and is more nearly their equal in size, strength, and mental resources. Although we are aware of the devastating effects of incest on its victims, and are sympathetic to the victim whose will to resist has been overcome by a prolonged pattern of abuse, we reluctantly conclude that a pattern of incest is not always a substitute for the element of force required by R.C. 2907.02(A)(2). A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit.

65 Ohio St.3d at 55. Accordingly, Ohio has adopted two standards of force for use in rape

-24-

prosecutions, one used particularly when dealing with minor child victims which is based upon a relationship that creates "a unique situation of dominance and control in which explicit threats and displays of force are not necessary to affect the abuser's purpose." *Eskridge*, 38 Ohio St.3d at 58. The other standard is used for adults, where force may not so easily be inferred in particular circumstances. *Schaim*, 65 Ohio St.3d 51.

The standard for adults requires evidence that the defendant used force or the adult victim believed that the defendant might use physical force upon her. *Schaim,* 65 Ohio St.3d at 55; *see also Toney v. Anderson*, No. 96-4284, 1998 WL 68919, unpublished ("[i]n this case, the Ohio Court of Appeals applied the relaxed standard for a showing of 'force or threat of force' that applies in cases involving children,...rather than the stricter standard of proof of force that applies when the victim is an adult.")(citations omitted).

Here, the Ninth District Court of Appeals employed the relaxed *Eskridge* standard in finding that sufficient evidence supported Petitioner's rape convictions against all victims because the victims had testified that their wills were overcome by fear. ECF Dkt. #9, Exhibit G at 6. But the victims here were all adults. Thus, the Ohio appellate court should have applied the *Schaim* standard which requires that the State prove the element of force or threat of force in order to sustain a conviction of rape. *Schaim*, 65 Ohio St.3d at 55.

Since the Ninth District Court of Appeals applied the wrong standard, the undersigned recommends that the Court review Petitioner's case under the proper standard set forth in *Schaim*. However, the undersigned notes that Sixth Circuit unpublished authority supports allowing this Court to decline review of this issue altogether as it involves solely a question of state law interpretation and application. *See Toney*, 1998 WL 68919 ("In this case, the Ohio

-25-

Court of Appeals applied the relaxed standard for a showing of "force or threat of force" that applies in cases involving children, ...[t]o the extent that petitioner is disagreeing with the standard of force applied to him, he raises a state law question that we lack authority to review."(citation omitted)).  Should the Court decide to apply the proper standard in order to determine if Petitioner was constitutionally deprived of Due Process, the undersigned submits the following review based upon that standard.

The undersigned recommends that the Court find that even under *Schaim*, any rational trier of fact could have found the element of force proven as to victims E.L. and J.B. through their testimony as each testified that Petitioner created the belief that he would use physical force against them if they did not submit.  Keeping in mind that this Court cannot review the credibility of the witnesses and must view the evidence in a light most favorable to the State when determining whether the juror made a *rational* decision to convict, the following testimony from victims E.L. and L.R. evidences threat of force.

### <u>a.</u>     <u>E.L.'S TESTIMONY</u>

E.L.'s testimony supports the element of force necessary to sustain Petitioner's rape conviction and any rational trier of fact could have found the force element proven beyond a reasonable doubt.  E.L. testified to her fears that Petitioner "*could do* something" to her, that "he *could have* held me down and just forced me down, he *could have* hurt me", "he *could have* physically attacked me if I started yelling"... and "he *could have* caused massive problems" ECF Dkt. #13 at 205-208 (emphasis added).  E.L.'s assertions of fear as to what Petitioner could have done, but did not do, question a finding of force or threat of force.  E.L. further stated that while Petitioner kept one of his hands on her back during the assault, which scared

her because of his position as a chiropractor, she admitted that Petitioner did not hold her down with that hand.  *Id.* at 204.  Petitioner's position as a chiropractor is insufficient in and of itself to create the threat of force.  *See State v. Bajaj*, No. 03CO16, 2005 WL 1385709 (June 8, 2005), unpublished.

However, what E.L. states immediately after the above testimony could have led any rational juror to find that the threat of force element was proven beyond a reasonable doubt. After testifying to that which Petitioner could have done to her, E.L. explains:

> He had control.  I mean, if he is –his one hand's there, he could very easily have taken one of my arms or a leg and hurt me; and I was fearful of physical harm at that point.

ECF Dkt. #13 at 205.  E.L. further stated that Petitioner's hand remained on her back during the assault and while he did not hold her down very hard, the placement of his hand controlled her center of gravity, which caused her fear.  *Id.* at 230.  If force or actual threats of force are lacking, the law requires that the victim believe that physical force will be used if she does not submit, which necessarily requires the victim to substantiate her fear based on the defendant's conduct. *See e.g., Schaim*, 65 Ohio St.3d 51; *Dye*, 82 Ohio St.3d 323.  E.L.'s testimony does not indicate that Petitioner forced her physically to submit or threatened her in any manner. However, E.L. did testify that Petitioner's hand placement at the time of the assault created fear in her as he had physical control over her, which caused her to submit to the rape.  Based upon this testimony, any rational juror could have found that Petitioner created a belief in victim E.L. that had she not submitted, he would have harmed her.  Accordingly, the undersigned recommends that the Court DENY Petitioner's fifth ground for relief alleging insufficient evidence with which to convict him of the offense of rape of victim E.L.

-27-

**b.**      **L.R.'S TESTIMONY**

The undersigned also recommends that the Court DENY Petitioner's federal habeas corpus petition as it pertains to his rape conviction of victim L.R since rational jurors could have also concluded that the force element of rape was met, although evidence of actual force was presented with victim L.R.  Victim L.R. testified that during her appointment with Petitioner, she felt that Petitioner was holding her hips down so that she could not move while he was penetrating her with his fingers.  ECF Dkt. #14 at 399.  L.R. stated that she was lying on her back on the examination table and Petitioner was massaging a ligament on the inside of her thigh/groin area when Petitioner then stuck his finger inside of her underwear and eventually digitally penetrated her vagina.  *Id.* at 397-98.  When this occurred,  L.R. testified that she "freaked, panicked, just froze" and "laid there and kept saying to myself that it wasn't happening, and then...once I convinced myself that it happened, I grabbed him by the arm and pushed him away." *Id*. at 398-400, 436.  When asked why she grabbed the arm of the hand that did not penetrate instead of the one that did, L.R. explained, "It was, like, holding my hips down so that I wouldn't move."  *Id.* at 399.

Based upon this testimony, any rational juror could find that Petitioner's holding of L.R.'s hips in order to digitally penetrate her sufficiently established force.  While Petitioner made no effort to resist L.R.'s termination of the activity or to persist in the conduct when L.R. grabbed his arm, evidence of force was nevertheless offered.  *Id*. at 399.

For these reasons, the undersigned recommends that the Court find no merit to that portion of Petitioner's fifth ground for relief asserting that insufficient evidence existed with which to convict him of the rape of victim L.R.

<u>c.</u>        <u>J.B.'S TESTIMONY</u>

Unfortunately, the undersigned recommends that the Court find that no rational trier of fact could have found the element of force proven beyond a reasonable doubt based upon J.B.'s testimony.  While Petitioner's actions were totally unprofessional, violative and disgusting, victim J.B.'s testimony provides no evidence that Petitioner forced, threatened, or created in J.B. a belief that force would be used against her if she did not submit.  The only evidence that the State used to infer a threat and/or to support a possible reasonable sense of fear that J.B. *may have* experienced in dealing with Petitioner is that sometime prior to the incident Petitioner said, "[t]he things I would like to do to you," during one of three nude lap dances that J.B. had provided Petitioner at the club in which she worked.  ECF Dkt. #14 at 265-67.  However, J.B.'s testimony regarding Petitioner's statement to her negates any inference of threat because she stated that men usually made such comments to her and she "took it as a compliment." *Id*. at 317.

During J.B.'s chiropractic treatment, Petitioner had J.B. lie on her side on the examination table as he adjusted her hips.  ECF Dkt. #13 at 276.  The door to the exam room was left open so that persons walking by could see or hear activity in the room.  While in that position, one of Petitioner's hands rested on J.B.'s upturned hip and the other "went straight to the outside of [her] vagina" on the outside of her clothing.  ECF Dkt. #14 at 276.  When this occurred, J.B. rolled flat onto her stomach thereby forcing Petitioner to remove his hand from her vaginal area.  *Id.* at 277.  J.B. testified that as soon as she laid her body down flat, it forced his hand out and Petitioner did not leave his hand there but took it out.  *Id.*  After Petitioner removed his hand, neither he nor J.B. said anything to one another and J.B. stated that she did

not try to stop Petitioner's conduct because she was trying to make an excuse for what happened as she thought the whole incident was possibly a mistake and that Petitioner may have "blacked out". *Id.* at 277-278.

After Petitioner removed his hand from J.B.'s vaginal area, he began to massage J.B's back and as he did this, J.B. "felt fingers inside of [her] vagina." ECF Dkt. #14 at 279, 281. J.B. stated this happened very quickly and unexpectedly. *Id*. at 280. When this occurred, J.B. testified that she pulled herself up and off of the examination table which terminated the sexual conduct. *Id*. at 281-82, 284. J.B. did not testify that Petitioner attempted to persist in the conduct or resist her termination of the conduct. Once off the examination table, J.B. testified that as she began to exit the exam room, Petitioner hugged her and told her he cared for her. *Id*. at 282, 284-85. J.B. stated after that she didn't know what to do because she was just "really scared." *Id*. at 282. J.B. thereafter sought the advice of a lawyer. *Id*. at 287-288.

Based upon this testimony, no rational juror could have found that the State met its burden of proving the force element of rape. J.B.'s testimony does not establish that Petitioner forced his hands on her or that he displayed any other kind of aggressiveness, and the testimony fails to show that Petitioner threatened J.B. or otherwise created in her a belief that she would suffer physical harm if she did not submit. For these reasons, the undersigned recommends that the Court GRANT Petitioner's fifth ground for relief as to insufficient evidence existing to prove the force element of rape as against victim J.B.

## 2. SEXUAL BATTERY CONVICTIONS

Petitioner also challenges the sexual battery convictions as to each victim. Ohio Revised Code §2907.03(A)(1), the sexual battery statute, prohibits a person from knowingly

coercing another to engage in sexual conduct by any means that would prevent resistance by a person of ordinary resolution. Ohio Rev. Code § 2907.03(A)(1).  Sexual battery includes sexual conduct by coercion and is designed to cover the compelling of sexual conduct in a situation where the offender takes an unconscionable advantage of the victim; it also includes situations where the compelling act, force or threat of force, is done only "knowingly" rather than "purposely." *State v. Tolliver*, 49 Ohio App.2d 258, 267, 360 N.E.2d 750 (1976).  Sexual battery is rape with a lesser mens rea and "coercion" rather than simply "force." *State v. Bajaj*, No. 03C016, 2005 WL 1385709 at *4, unpublished (citing *State v. Wilkins*, 64 Ohio St.2d 382, 386-87, 415 N.E.2d 303 (1980)).

The sexual battery statute does not define "coercion", but its commentary states that sexual conduct by coercion is broader than sexual conduct by force.  *Bajaj*, 2005 WL 1385709 at *4, quoting Commentary to Ohio Rev. Code § 2907.03.  The Ohio Supreme Court has held that "[f]orce or the threat of force will always constitute coercion that would prevent resistance by a person of ordinary resolution." *Wilkins*, 64 Ohio St.2d at 386.  Thus, the Ohio Supreme Court explained in *Wilkins* that "[b]ecause proof of purpose is always sufficient to prove knowledge, and because force or threat of force always constitutes coercion which would prevent resistance by a reasonable person, the offense of rape as defined in R.C. 2907.02(A)(1) cannot be committed without the offense of sexual battery as defined in R.C. 2907.03(A)(1) also being committed." *Wilkins*, 64 Ohio St.2d at 386.

Applying the holding in *Wilkins* to the undersigned's above recommendation that the Court find that sufficient evidence existed that Petitioner committed the offense of rape against victims E.L. and L.R., the undersigned recommends that the Court find that sufficient evidence

exists that Petitioner committed sexual battery on these victims as well. Since any rational trier of fact could have found the essential elements of the rape proven beyond a reasonable doubt against Petitioner in his sexual assault of victims E.L. and L.R., those elements are sufficient to prove the offense of sexual battery as well. *Wilkins*, 64 Ohio St.2d at 386.

The undersigned now turns to the sexual battery convictions as to victim J.B. The appellate court did not discuss the elements of sexual battery in its decision as it relied upon its discussion of purpose and force in conjunction with its decision affirming Petitioner's rape convictions in order to sustain the sexual battery convictions. ECF Dkt. #9, Exhibit G. Moreover, the appellate court did not discuss a sufficiency of the evidence standard but rather engaged in a manifest weight of the evidence discussion, although Petitioner had argued both on appeal. *Id.* The Ninth District summarily dealt with Petitioner's challenge to his convictions for sexual battery by merely stating that "as discussed above [relating to the rape convictions], the jury did not lose its way in finding that the State proved the element of force beyond a reasonable doubt." *Id.* Since no separate analysis reasons existed for the upholding of the sexual battery convictions, the undersigned shall review the appellate court's reasons for upholding the rape convictions in analyzing the reasonableness of the appellate court decision.

It appears that the State and the appellate court at least in part considered Petitioner's position as a chiropractor in order to argue that a doctor has a certain amount of control over the patient which helped establish the force element and the element of coercion. The court noted that the doctor-patient relationship does not in and of itself create an inference of force, but found that the relationship of the parties was a relevant fact that could be considered when determining whether force had been established. ECF Dkt. #9, Exhibit G.

"The Ohio Supreme Court has held that a defendant does not commit sexual battery if the only evidence of coercion is the relationship between the defendant and the victim unless the statute specifically provides otherwise." *Bajaj*, 2005 WL 1385709 at *5, citing *State v. Noggle*, 67 Ohio St.3d 31, 1993-Ohio-0189.  In *Bajaj,* the Ohio appellate court found insufficient evidence of coercion where the only evidence of coercion, besides the fact that the defendant was a doctor, was that the examination table was up against the wall.  *Id*.  In *Bajaj,* "the State argue[d] that Bajaj's position of authority as a doctor and the circumstance of the examination were sufficient to prove that he coerced the victim by means that would prevent resistance by a person of ordinary resolution." *Id.* at *5.  The court relied on the *Noggle* decision and rejected the argument under current Ohio law.  The court quoted the sexual battery statute, which outlines specific situations and relationships where sexual conduct is prohibited because the situations are those in which the offender takes unconscionable advantage of the victim, and noted that it did not specifically include the doctor-patient relationship.  *Id.* at *6. The appellate court explained:

> The legislature has clearly chosen that, in certain situations, the defendant's position of authority confers criminal liability for sexual conduct with someone under their direct control or supervision. *State v. Singleton,* 11th Dist. No.2002-L-077, 2004-Ohio-1517, at ¶ 56. Had the General Assembly sought to protect all patients from the sexual advances of their doctors, it would have done so specifically. The specific sections of R.C. 2907.03(A)(5)-(11) prevent a finding of guilt in this case based purely on Bajaj's status as a doctor.

*Bajaj*, 2005 WL 1385709 at *6.  The *Bajaj* court did indicate that the defendant's status could be considered in certain circumstances when determining whether coercion used was sufficient to prevent resistance by an ordinary resolution, such as "if a doctor refused to write a

-33-

prescription for a patient unless the patient submitted to sexual conduct." *Id.*

The appellate court in *Bajaj* was unable to find coercion sufficient that a person of ordinary resolve would not resist the sexual conduct in similar circumstances to those presented in the instant case. As in *Bajaj*, Petitioner in this case did not threaten to withhold treatment from J.B. if she did not yield to his sexual conduct and she did not testify that she thought that he was threatening her in such a manner. Moreover, J.B. did not testify that Petitioner compelled her to engage in sexual conduct by telling her that it was necessary for treatment. And the evidence does not show that Petitioner used force or threatened force in order to make J.B. submit. As in *Bajaj*, there are no acts on the part of Petitioner to suggest that J.B. was coerced by his authority as her chiropractor and such a theory is also unsupported by any evidence that would tend to show that a person of ordinary resolve would not resist. While the appellate court stated that the victims in the instant case each testified to their intense fear and that they feared that resisting would lead to serious bodily harm, the transcript does not support these findings with regard to victim J.B.

Again, while Petitioner's actions were incredibly violative as against J.B. and the other victims, the undersigned nevertheless recommends that the Court find that insufficient evidence existed to convict Petitioner of sexual battery against victim J.B.

## VI.    CONCLUSIONS AND RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that the Court dismiss Petitioner's first, second and fourth grounds for relief as procedurally defaulted with no cause and prejudice or fundamental miscarriage of justice demonstrated. The undersigned further recommends that the Court find no merit to Petitioner's third ground for relief.

-34-

In addition, the undersigned recommends that the Court GRANT the instant petition for a federal writ of habeas corpus on that part of Petitioner's fifth ground for relief alleging the insufficiency of the evidence used to convict him of the rape and sexual battery of J.B.  The decision of the Ninth District Court of Appeals was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §2254(d)(2).  However, the undersigned further recommends that the Court deny the instant petition for a writ of federal habeas corpus and find no merit to Petitioner's fifth ground for relief on the part in which he asserts that insufficient evidence existed with which to convict him of the rapes and sexual batteries of victims E.L. and L.R.

Dated:     December 19, 2006                         ___*/s/George J. Limbert*___
                                                     Magistrate Judge George J. Limbert

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).