UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARRIN PORDASH, | ) | Case No.: 1:06 CV 836 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| STEWART HUDSON, Warden, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

Now pending before the court is Petitioner Darrin Pordash's ("Petitioner" or "Pordash") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (Pet., ECF No. 1.) For the reasons stated below, the court hereby denies the Petition and enters final judgment in favor of Respondent.

**I. FACTS AND PROCEDURAL HISTORY**

On April 7, 2006, Pordash filed the instant Petition, challenging the constitutionality of his guilty plea for rape and sexual battery against three victims. (*Id.*)  Petitioner raises five grounds for relief.  The first four grounds assert ineffective assistance of trial counsel, and the fifth ground asserts that Petitioner's conviction was based on insufficient evidence.  (*See id.* at 2.)

This case was referred to Magistrate George J. Limbert for preparation of a Report and Recommendation. (ECF No. 4.) On December 19, 2006, the Magistrate Judge issued his Report and Recommendation, recommending that Petitioner's first four grounds be denied and that the fifth ground be partially granted and partially denied. (Report and Recommendation, ECF No. 17.) Specifically, the Magistrate Judge found that Petitioner's first, second, and fourth grounds were procedurally defaulted because Petitioner failed to raise them in the Ohio Supreme Court (*id.* at 16) and that his third ground failed to meet the standard for an ineffective assistance of counsel claim (*id.* at 21). As to Petitioner's fifth ground, the Magistrate Judge found that sufficient evidence was presented to support the convictions of rape and sexual battery for two victims ("E.L." and "L.R."), but that there was insufficient evidence to support the conviction of rape and sexual battery for the third victim ("J.B.") (*id.* at 21).[1]

On December 29, 2006, Pordash timely filed his Objections to the Report and Recommendation. (ECF No. 19.) On January 29, 2007, after being granted an extension, Hudson timely filed his Objections. (ECF No. 20.) For the reasons that follow, this court adopts in part and rejects in part the Magistrate Judge's Report and Recommendation.

## II. LAW AND ANALYSIS

### A. Petitioner's First, Second, Third, and Fourth Grounds for Relief

---

[1] On page 1, the Report and Recommendation erroneously states that the Magistrate Judge recommends that the court "GRANT the application for federal habeas corpus as to the rape conviction as to victim J.B., but DENY the application as to the sexual battery conviction as to J.B." (Report and Recommendation at 1.) However, the analysis in Section V.C.1.c. and V.C.2 (*id.* at 29-34) and its conclusion (*id.* at 35) all state that the Magistrate recommends granting Petitioner's application for habeas as to *both* the rape and sexual battery convictions as to J.B. The court assumes that the introduction is in error.

- 2 -

The court finds, after careful review of the Magistrate Judge's Report and Recommendation, Petitioner's Objections, and all other relevant documents, that the Magistrate Judge's conclusions as to Petitioner's first, second, third, and fourth grounds for relief are fully supported by the record and controlling case law.

### B. Petitioner's Fifth Ground for Relief

The court finds, after careful review of the Magistrate Judge's Report and Recommendation, Petitioner's Objections, and all other relevant documents, that the Magistrate Judge's conclusions as to Petitioner's fifth grounds for relief as to E.L. and L.R. are fully supported by the record and controlling case law. However, as to the rape and sexual battery convictions pertaining to J.B., the court finds that: (1) the Magistrate Judge impermissibly replaced the analysis of the state court with its own analysis; and (2) the prosecution presented sufficient evidence to convict Petitioner of raping and committing sexual battery against J.B.

#### 1. The Scope of Federal Habeas Review

Petitioner alleges that he was denied due process when a jury convicted him of rape and sexual battery based on the prosecution's insufficient evidence. (Pet. at 20.) The Magistrate Judge found that the Ohio appellate court – the Ninth District Court of Appeals – employed the wrong standard in determining sufficiency of the force element of rape. (Report and Recommendation at 24-26.) The Magistrate Judge then purported to employ a different standard and, in so doing, reached its own determination that sufficient evidence was presented to establish that Petitioner had raped and sexually battered E.L. and L.R, but that insufficient evidence was presented to show that Petitioner had raped or sexually battered J.B. (*Id.* at 26-34.)

The Magistrate Judge acknowledged that whether the Ohio appellate court employed the correct standard to review the sufficiency of the evidence as to Petitioner's rape conviction "involves solely a question of state law interpretation and application." (Report and Recommendation at 25.) The Magistrate Judge then quoted an unpublished Sixth Circuit case, which found that "[t]o the extent that petitioner is disagreeing with the standard of force applied to him, he raises a state law question that we lack authority to review." *Toney v. Anderson*, No. 96-4284, 1998 U.S. App. LEXIS 2683, at *5 (6th Cir. 1998) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). Thereafter, however, the Magistrate Judge then proceeded to provide its own analysis of the claim "[s]hould the Court *decide* to apply the proper standard . . . ." (Report and Recommendation at 26) (emphasis added.)

The Magistrate Judge mistakenly implies that a federal habeas court has discretion to review a state court's application of state law. However, the Supreme Court has held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). It is well-settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). As such, the Magistrate Judge erred when it substituted its own interpretation of state law for that of the Ninth District Court of Appeals.

Furthermore, as Respondent points out in its Objections to the Magistrate's Report and Recommendation, the Magistrate Judge erred in finding that the Ohio appellate court applied the

wrong standard as to the burden of proof for the force element of rape. (Resp't's Objections 5-7, ECF No. 20). Although the Ohio appellate court used the doctor-patient relationship as *one* relevant factor in determining whether sufficient evidence existed to establish the element of force, the court based its finding on other evidence as well. *State v. Pordash*, No. 04CA008480, 2004 Ohio App. LEXIS 5539, ¶ 12 (Ohio Ct. App. Nov. 17, 2004). Therefore, even if this court were able to substitute its own standard for that of the state court's, there would be no need to do so in the instant case. Accordingly, on habeas review of Petitioner's fifth ground, the court's proper inquiry is whether, when examining the state law as interpreted by the state court, Petitioner's due process rights were violated by convicting him without sufficient evidence.

## 2. Sufficiency of the Evidence

To determine whether the government presented sufficient evidence to support a conviction against a petitioner, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As the *Jackson* Court states, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

### *a. Rape*

Ohio's rape statute makes it illegal for a person to "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." O.R.C. § 2907.02(A)(2). In addition, O.R.C. § 2901.01(A)(1) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Under Ohio case

law, "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St. 3d 51, 55 (Ohio 1992); *see State v. Eskridge*, 38 Ohio St. 3d 56, 59 (Ohio 1988) ("As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.").

In the instant case, Petitioner alleges that the prosecutor did not present sufficient evidence to establish the element of force in his rape convictions. However, as Respondent argues in its Objections to the Report and Recommendation, the Ohio appellate court found "that there was ample evidence that the victims' will was overborne by their fear of the victim." (Resp't's Objections at 5.) The Ohio Appellate Court specifically stated that the doctor-patient relationship between Petitioner and his victims was a relevant factor, but that it did not create an inference of force. *Pordash*, No. 04CA008480, 2004 Ohio App. LEXIS 5539, ¶ 12. Furthermore, the Ohio appellate court stated that "each victim knew of Appellant's extensive background in martial arts. As such, each victim testified that they feared that any resistance would lead to serious bodily harm." *Id.*

The following are excerpts from J.B.'s trial testimony on direct examination:

> Q   Describe what the [chiropractor patient's] table looks like for the jury.
> A   Okay. The table's a little bit longer than the desk. It has a hole – a hole for your face to go in, and I was laying on it – or facedown; and that's, you know, when he was adjusting my hips, you know, he kind of had an arm on my shoulder and the other one on my hip and he adjusted the wall side first and then, you know, he rolled me back down and then he did the other side; and the other side, you know, he had my – his hand on my hip and one on my shoulder and from there his hand went straight to on the outside of my vagina, and then –
> Q   Over or under the clothes?

- 6 -

A    Over the clothes.
Q    Okay.
A    And I kind of laid my body back down, you know, so it kind of smooshed his hand.
Q    Did you do anything to stop him?
A    At that time, no, because I thought maybe, you know, he had a blackout or something. I was trying to make an excuse for what just happened, but he didn't say anything to me.
Q    Why would you lay down? Then his hand would be underneath you and closer to you.
A    Well, I was thinking either, you know, if he was – forgot who I was, if I – if he had an open area, it's much easier to, you know, have access compared to – I thought if I laid my body down that it would force him to get his hand out, which it did.

. . . .

Q    Did he leave his hand there?
A    No, no, no, no, he took it out – like, as soon as I put my body back down, he took it out and he started, you know, massaging my back. And the whole time I'm thinking, oh, my goodness, what just happened, you know, but –
Q    Why didn't you get up and leave right then?
A    Because, like I said, I thought he just blacked out or something. You know, I watch the news and they talk about people who just – just black out and don't remember what they were doing, and I just thought for some odd reason that happened to him. He didn't say anything, he didn't apologize.
    And then he took those electronic things off my back and he started massaging my back again like nothing happened, so, as he was massaging my back, he lifted up my shirt and –
Q    Is that normal?
A    Honestly, I don't remember if it's normal. I don't.
Q    Okay.

. . . .

A    And then he – he was massaging my back and then I felt fingers inside of my vagina, and that right there, I – I knew something wasn't right.
Q    Well, explain to me how that happened.
A    Okay. He was massaging my back.
Q    Okay.

A     And he was – and he asked me what was hurting, and I told him my lower back, but normally my lower back, that's what hurts, and up my – my shoulders and he was massaging my lower back and he was right in between my tail – like, right above my tailbone.

Q     Over or under the pants?

A     This right now, it was, like, not – like, right at the waistline.

Q     Okay.

A     And then it happened so quick from there it's like he didn't slowly edge his way down, it was there, and then it was inside my pants and my – you know, inside of me.

Q     Are you still laying facedown?

A     At this time, yes.

. . . .

Q     His hand was on your back, on the small of your back?

A     Yes, before he entered me, yes.

Q     Tell me, then, where his hand goes next.

A     Okay. And his other hand was across the table, you know.

. . . .

Q     Was [his hand on the table] touching you?

A     I think maybe, like, a palm was, but it's mostly resting against the table.

Q     Okay.

A     This hand was the hand that, you know, was massaging the small of my back.

Q     Okay.

A     And then this is the hand, also, that went into my pants.

Q     Okay.

A     And then –

Q     So it goes into your pants. Does it touch your buttocks?

A     I just felt it straight into my vagina, as honestly –

Q     All right. Did it penetrate your vagina?

A     Yes, it did.

Q     Was it painful in any way?

A     Yes, it was.

Q     What did you do next?

A     From – from there I – I scooted up, like, I nudged myself a little and then I slid off the table sideways and I –

Q     Is that towards him, away from him?

A     Away from him, towards the door.

. . . .

Q     Okay. All right. Where did you go from there?

> A   I went – I went to school because I was thinking I didn't know what to do. I was really scared.

(Trial Transcript 276-282, Vol. II, Tr. to Resp't's Return of Writ, ECF No. 14.)

These excerpts present evidence as to how suddenly, and without warning, Petitioner began improperly touching J.B. The evidence also shows that Petitioner was engaged in treating J.B. immediately prior to assaulting her and that he had one hand on her shoulder while he began to penetrate her with his other hand, thereby indicating a certain amount of physical control over her. This evidence is similar to the evidence presented for the other two victims, from which the Magistrate Judge found sufficient evidence to support the rape convictions. The evidence also demonstrates that J.B. was in fear when she left Petitioner's office. As such, the court finds that, viewing the evidence in the prosecution's favor, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, the court finds that Petitioner's rape conviction of J.B. is supported by sufficient evidence and that, therefore, his due process rights were not violated.

### *b. Sexual Battery*

As the Magistrate Judge notes, because the Ohio statute for rape requires a finding of *purpose*, which encompasses the requirement of *knowledge* under the statute for sexual battery, a conviction for rape under Ohio law inherently includes a conviction for sexual battery. (Report and Recommendation at 31); *see State v. Wilkins*, 64 Ohio St. 2d 382, 386 (Ohio 1980). Consequently, as the court has upheld the rape conviction as J.B, the conviction for sexual battery must stand as well.

Therefore, the court hereby rejects the Magistrate Judge's findings regarding the sufficiency of the evidence in support of the rape and sexual battery convictions as to J.B. Accordingly, Petitioner's Writ of Habeas Corpus is hereby denied as to all grounds for relief.

### III. CONCLUSION

Pordash's petition for writ of habeas corpus is hereby denied, and final judgment is entered in favor of Respondent. Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

July 31, 2007